1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                       EASTERN DISTRICT OF CALIFORNIA

10

11   UNIVERSAL CASUALTY COMPANY,          No. 2:11-cv-00934-MCE-GGH

12            Plaintiff,

13      v.                                 MEMORANDUM AND ORDER

14   FRED C. GODINEZ, III, et al.,

15            Defendants.

16                            ----oo0oo----

17

18      Plaintiff Universal Casualty Company ("Universal") seeks

19   redress from Defendants Fred C. Godinez, III, Yogesh Kumar, Links

20   Insurance Services, Inc., and National Transportation Associates,

21   Inc. (collectively, "Defendants") based on claims of breach of

22   statutory fiduciary duty under California and Arizona law; breach

23   of contractual fiduciary duty; breach of common law fiduciary

24   duty; intentional interference with contractual relations;

25   negligent interference with contractual relations; fraudulent

26   transfer in violation of California law; and formation of a

27   constructive trust.

28   ///

1

1    Presently before the Court is Defendants' Motion to Dismiss
2    Plaintiff's Complaint for failure to state a claim upon which
3    relief may be granted pursuant to Federal Rule of Civil Procedure
4    12(b)(6).[1]

5

6                            **BACKGROUND**[2]

7

8        This case arises from the commercial relationship between
9    Universal, an insurance carrier, and Defendants, individuals and
10   entities who were in the business of selling insurance policies
11   on behalf of Universal.  Universal provided insurance to its
12   customers ("policyholders") by relying on the services of various
13   managing general agents who would quote, bind and issue the
14   insurance policies.
15       Between August 2005 and July 2009, Defendant Godinez was a
16   Shareholder, President, Director and Officer of Sovereign General
17   Insurance, Inc. ("Sovereign").  From April 2008 to July 2009,
18   Defendant Kumar became the majority shareholder, CFO, Director
19   and Officer of Sovereign.  Kumar was also the Chairman of
20   Sovereign's Board of Directors between 2008 and 2009.  Together
21   with Godinez, Kumar controlled, directed and oversaw Sovereign's
22   operations between 2008 and 2009.
23   ///
24   ///

25

26       [1] Unless otherwise noted, all further references to Rule or
     Rules are to the Federal Rules of Civil Procedure.
27

28       [2] The factual assertions in this section are based on the
     allegations in Plaintiff's Complaint, unless otherwise specified.

                                   2

Kumar, Godinez, and Sovereign were at all relevant times licensed as insurance brokers and agents by the California Department of Insurance and the Arizona Department of Insurance.  As part of its business, Sovereign functioned as the managing general agent for various insurance carriers, including Universal.

**A.   The Program Manager Agreement**

On August 2, 2005, Plaintiff entered into a Program Manager Agreement ("PMA") with Sovereign.[3]  Through the PMA, Universal appointed Sovereign as its non-exclusive managing general agent, authorized to bind commercial vehicle-related insurance policies on behalf of Universal in California and Arizona.

Under the PMA, Sovereign's duties and responsibilities included, among other things, (i) soliciting customers; (ii) underwriting insurance policies and binding risks on behalf of Universal; (iii) charging, collecting, holding, and remitting all premiums due on policies bound or written under the PMA; (iv) refunding Return Unearned Premiums, resulting from cancellations or to Insured Parties and Premium Finance Companies when appropriate; (v) accounting for all transactions and insurance policies written under the PMA; and (vi) other work necessary or incidental to the insurance business written under the PMA.

///

///

---

[3] It is undisputed that the PMA was in force at all times relevant to the dispute at issue.

3

1   Under Article III.N. of the PMA, labeled "Fiduciary Capacity
2 - Premium Trust Funds," Sovereign was obligated to "act as a
3 fiduciary for [Universal]" and the insurance premiums collected
4 from "policyholders" were required to be deposited into a
5 segregated premium trust account (the "Premium Trust Account").
6 The Premium Trust account was opened at Pacific State Bank under
7 the name "UCC Trust Account" (i.e., "Universal Casualty Trust
8 Account").
9   Article III.N.3. prohibited Sovereign from commingling any
10 premiums or other funds relating to insurance policies written
11 under the PMA with funds it held in any other capacity.
12 Specifically, subject to certain exceptions set forth in the PMA,
13 the Premium Trust Account existed "solely for the ... approved
14 purpose" of (i) holding and remitting amounts due to Universal
15 under the PMA, (ii) refunding Return Premiums to Insured Parties
16 and Premium Finance Companies, and (iii) withdrawing Sovereign's
17 earned commissions.
18   Under the PMA, insurance premiums collected from an Insured
19 Party or Premium Finance Company must be refunded to such party
20 in certain situations (known as a "Return Premium") where (i) the
21 Insured Party's policy is canceled; (ii) there is a reduction in
22 the number of insured vehicles in a fleet; or (iii) when the
23 Insured Party or Premium Finance Company paid a greater estimated
24 premium at the time of purchasing the policy, and the premium is
25 later determined to be less than the initial estimate.
26 ///
27 ///
28 ///

4

Pursuant to the PMA, Sovereign and its agents were expressly obligated to refund Universal for commissions it retained on account of premiums that were sold but later required to be refunded to Insured Parties or Premium Finance Companies as Return Premiums.

On the same day of the PMA signing, Godinez executed the "Program Manager Agreement - Sovereign General Insurance, Inc. Manager's Personal Guaranty" (the "Guaranty").  The Guaranty (1) Promised Sovereign's obligations to collect and forward premiums received by the issued insurance policies written by Sovereign on behalf of Universal; (2) Promised that Sovereign would manage and account for the trust funds in the Premium Trust Account in accordance with the PMA; and (3) Promised Sovereign's payment of interest amounts due under the PMA and payment of costs and attorney's fees incurred in collecting amounts due.

The Guaranty, to which Godinez provided his personal guaranty of "faithful performance of all the terms and conditions of the [PMA]," listed Godinez as an "officer of Manager."  The PMA defines the term Manager as "Sovereign and all related entities as identified in the ENDORSEMENTS attached [to the PMA] and made part of this Agreement (**collectively and individually**: 'Manager')." (emphasis in original).  The Guaranty was incorporated as part of the PMA as Endorsement G thereto.

///
///
///
///
///

**B.   Godinez's and Kumar's Alleged Wrongful Conduct**

Between the execution of the PMA in 2005 and the termination of the agreement in 2009, Plaintiff alleges Defendants Godinez and Kumar breached their statutory and contractual fiduciary duties owed to Universal with respect to premiums collected on Universal's behalf.  Specifically, between 2005 and 2009, Godinez, through his position at Sovereign, caused multiple transfers from Sovereign's bank accounts to himself and a number of insiders.  The funds transferred were allegedly funds from the premiums owed to Universal.  Between the years 2008 and 2009, Plaintiff alleges that Defendant Kumar caused multiple transfers from Sovereign's bank accounts to himself and a number of insiders totaling $1,465,950.00.  Alleged insiders include Links, Mr. Subhas Chand (his father), Krishna Devi, DD/BS, LLC, and Din Sharma.  These funds allegedly consisted of premiums due to Universal.

Pursuant to the PMA, each month Sovereign would prepare and submit a monthly spreadsheet (each spreadsheet is referred to as a "Bordereau" and two or more Bordereau, "Bordereaux") showing: (i) the gross premium due to Universal for each policy written by Sovereign for Universal; (ii) the Return Premium due to an Insured Party, if any; (iii) the amount of Sovereign's commission; and (iv) the net premium owed to Universal after deductions for any Return Premium and for Sovereign's commission (the "Net Bordereau Premium").  According to Plaintiff, the Bordereaux were prepared at the direction and with the approval of Kumar and Godinez.

6

Additionally, under the PMA agreement, Sovereign would issue a check bi-monthly to Universal for the Net Bordereau Premiums which included all premium sales for the prior month.  The amount of each check was based on the Bordereau prepared for the prior month.

On June 30, 2009, Universal received a check from Sovereign in the amount of $511,702.40 payable out of the Premium Trust Account for the Net Bordereau Premium of April 2009 (the "June 30 Check").  Universal was unable to deposit the June 30 Check because Sovereign allegedly placed a stop payment on the check. Plaintiff alleges that when Universal asked Sovereign to remove the hold, Sovereign, through Kumar and Godinez, failed to do so, so the check did not clear.  Subsequently, Universal contacted Pacific State Bank and was told that the Premium Trust Account held a total of only $67.00.

According to the three Bordereaux statements Sovereign submitted to Universal for the months of April, May and June 2009, at least $1,867,823.00 of Net Bordereaux Premiums were owed to Universal and should have been available in the Premium Trust Account.

Subsequent to terminating its commercial relationship with Sovereign, Universal started receiving complaints from various Insured Parties and Premium Finance Companies that they never received their owed Return Premiums.  Universal claims that Sovereign, through Godinez and Kumar, failed to refund Return Premiums to Insured Parties and Premium Finance Companies, even though Sovereign was reporting on the Bordereaux statements represented to Universal that it was paying such refunds.

1   As a result, Universal has bore the cost and used its own funds
2   to make these refunds.  To date, Universal has refunded
3   approximately $577,209.00 of Return Premiums to affected parties.

4        Universal claims that Sovereign, pursuant to California law,
5   which imposes personal liability on Officers and Directors, owes
6   Universal at least $2,377,041.60.

7

8                              **ANALYSIS**

9        **A.    Required Joinder under Rule 19(a)(1)**

10

11       As a threshold matter, Defendants argue that the immediate
12  case should be dismissed on the basis that the court lacks
13  jurisdiction.  Defendants explain how there is a nearly identical
14  lawsuit in San Joaquin, California Superior Court filed by a
15  different plaintiff insurance company, but with identical
16  defendants.  Defendants here contend that the plaintiff who filed
17  this parallel lawsuit is a required party under Rule 19(a)(1),
18  and considering they have not been included, the matter should be
19  dismissed under Rule 12(b)(7).  Rule 19(a)(1) requires in
20  relevant part:

21          (a) Persons Required to Be Joined if Feasible.
            (1) Required Party.
22
            A person who is subject to service of process and whose
23          joinder will not deprive the court of subject-matter
            jurisdiction must be joined as a party if:
24
            (A) in that person's absence, the court cannot accord
25          complete relief among existing parties; or

26          (B) that person claims an interest relating to the
            subject of the action and is so situated that disposing
27          of the action in the person's absence may:

28  ///

                                  8

1    (i) as a practical matter impair or impede the person's
     ability to protect the interest; or
2
3    (ii) leave an existing party subject to a substantial
     risk of incurring double, multiple, or otherwise
     inconsistent obligations because of the interest.
4

5   Rule 19.   Here, Universal is a private company that engaged in an

6   exclusive agreement with Defendants and their employer,

7   Sovereign.   This agreement did not include any additional

8   parties.   Therefore, the matter before the court is exclusively

9   between Universal and Defendants.   As a result, there is nothing

10  to suggest complete relief could not be granted among the

11  existing parties.   This leaves the first element of Rule 19(a)(1)

12  unmet.   What is more, the third party claimed to be necessary to

13  this case has not petitioned to be joined and does not claim to

14  have an interest in the subject matter being contested.

15  Therefore, the second option for required joinder is also unmet.

16  The Court concludes that joinder is not required, therefore

17  jurisdiction is proper and denies Defendants' Motion to Dismiss

18  on that basis.   If joinder is not required, Defendants request

19  the case be dismissed due to the pendency of the parallel state

20  court action and on the basis of "wise judicial administration."

21  (MTD, 9)   In support of this theory, Defendants propose that the

22  Court follow the Colorado River doctrine.   This doctrine provides

23  a list of factors, any of which, if found to be met, would serve

24  as grounds to dismiss the case in order to achieve "wise judicial

25  administration."   Colorado River Water Conservation Dist. v.

26  United States, 424 U.S. 800, 817-818 (1976).

27  ///

28  ///

1   Specifically, Defendants advocate dismissal based on the <u>Colorado</u>

2   <u>River</u> factor which authorizes the Court to dismiss when a

3   parallel case would cause "piecemeal litigation." <u>Id.</u>

4       The Court declines to dismiss on this basis.  Defendants

5   have not demonstrated that the State Court action relates to the

6   instant action in any way that wold merit dismissal.  The causes

7   of action in this case relate to a specific contract between

8   Universal and Defendants, and Defendants have not shown that the

9   pending State court litigation would have any effect on the

10  issues before the Court.

11      Accordingly, because joinder is not required under

12  Rule 19(a)(1) and the parallel state court action has no bearing

13  on the final decision of the case at bar, this Court denies

14  Defendants' petition to dismiss the case on the basis of either

15  lack of jurisdiction or the <u>Colorado River</u> doctrine.

16

17      **B.    Motion to Dismiss**

18          **1.    Standard**

19

20      On a motion to dismiss for failure to state a claim under

21  Rule 12(b)(6), all allegations of material fact must be accepted

22  as true and construed in the light most favorable to the

23  nonmoving party.  <u>Cahill v. Liberty Mut. Ins. Co.</u>, 80 F.3d 336,

24  337-38 (9th Cir. 1996).  Rule 8(a)(2) requires only "a short and

25  plain statement of the claim showing that the pleader is entitled

26  to relief" in order to "give the defendant fair notice of what

27  the...claim is and the grounds upon which it rests."

28  ///

1  <u>Bell Atl. Corp. v. Twombly</u>, 127 S. Ct. 1955, 1964 (2007)

2  (internal citations and quotations omitted).  Though "a complaint

3  attacked by a Rule 12(b)(6) motion to dismiss does not need

4  detailed factual allegations, a plaintiff's obligation to provide

5  the 'grounds' of his 'entitlement to relief' requires more than

6  labels and conclusions, and a formulaic recitation of the

7  elements of a cause of action will not do."  <u>Id.</u> at 1964-65

8  (internal citations and quotations omitted).  A plaintiff's

9  factual allegations must be enough to raise a right to relief

10  above the speculative level.  <u>Id.</u> at 1965 (citing 5 C. Wright &

11  A. Miller, <u>Federal Practice and Procedure</u> § 1216, pp. 235-36 (3d

12  ed. 2004) ("The pleading must contain something more...than...a

13  statement of facts that merely creates a suspicion [of] a legally

14  cognizable right of action")).

15       Moreover, "Rule 8(a)(2)...requires a 'showing,' rather than

16  a blanket assertion of entitlement to relief.  Without some

17  factual allegation in the complaint, it is hard to see how a

18  claimant could satisfy the requirements of providing not only

19  'fair notice' of the nature of the claim, but also 'grounds' on

20  which the claim rests."  <u>Twombly</u>, at 1965, n.3 (internal

21  citations omitted).  A pleading must contain "only enough facts

22  to state a claim to relief that is plausible on its face."  <u>Id.</u>

23  at 1960; <u>see</u> <u>also</u> <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949-50

24  (2009).  If the "plaintiffs...have not nudged their claims across

25  the line from conceivable to plausible, their complaint must be

26  dismissed."  <u>Id.</u>

27  ///

28  ///

1    A court granting a motion to dismiss a complaint must then
2  decide whether to grant leave to amend.  Rule 15(a) empowers the
3  court to freely grant leave to amend when there is no "undue
4  delay, bad faith[,] dilatory motive on the part of the
5  movant,...undue prejudice to the opposing party by virtue
6  of...the amendment, [or] futility of the amendment...."  <u>Foman v.</u>
7  <u>Davis</u>, 371 U.S. 178, 182 (1962).  Leave to amend is generally
8  denied when it is clear the deficiencies of the complaint cannot
9  be cured by amendment.  <u>DeSoto v. Yellow Freight Sys., Inc.</u>,
10  957 F.2d 655, 658 (9th Cir. 1992); <u>Balistieri v. Pacifica Police</u>
11  <u>Dept.</u>, 901 F. 2d 696, 699 (9th Cir. 1990) ("A complaint should
12  not be dismissed under Rule 12(b)(6) unless it appears beyond
13  doubt that the plaintiff can prove no set of facts in support of
14  his claim which would entitle him to relief.") (internal
15  citations omitted).

16

17            **2.   Kumar's Intentional Interference with Contractual**
                      **Relations**
18

19    Universal asserts that Defendant Kumar knew or should have
20  known that the PMA and its obligations were binding against
21  Sovereign, and any act not conforming to the obligation would
22  negatively impact the contract between Sovereign and Plaintiff.
23  Kumar claims immunity from liability under this cause of action
24  because of his "confidential relationship to [Sovereign]." (Reply
25  to Oppo. to MTD, 12.)
26  ///
27  ///
28  ///

To prevail on an intentional interference with contractual relations claim, Plaintiff must properly plead the following: (1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage. Reeves v. Hanlon, 33 Cal. 4th 1140, 1148 (2004). Plaintiff must demonstrate Defendant had knowledge that the interference was certain or substantially certain to occur as a result of his or her action. Id.

Plaintiff presents sufficient facts to support the conclusion that Defendant Kumar, through his majority ownership and position as CFO of Sovereign, knew or should have known of the obligations laid out under the PMA.  Additionally, Plaintiff sufficiently alleges Kumar breached the PMA by unlawfully transferring Sovereign funds, owed to Universal, to himself and insiders.

Under California law, a contractual interference claim against a business entity can be sustained against the officers, directors, or owners of that entity.  Woods v. Fox Broadcasting Sub., Inc., 129 Cal. App. 4th 344, 351 (2005).  Having a "confidential relationship," as Defendant puts it, can serve as an escape from liability, only when the acts by the individual were intended to benefit the business entity in question, here Sovereign. Id. (citations omitted) (emphasis added).

///

///

13

Kumar presented no set of facts suggesting he acted with Sovereign's interest in mind when he transferred the contested funds to insiders and himself.  Therefore, the Court finds Defendant's "confidential immunity" argument unconvincing.

Accordingly, Defendant's Motion to Dismiss this cause of action is denied.

### 3. Defendant Kumar – Negligent Interference With Contractual Relations

Defendant Kumar moves to dismiss Plaintiff's negligent contractual interference claim on the grounds that California courts do not recognize this cause of action.  Generally, California courts have declined to recognize this cause of action.  See Fifield Manor v. Finston, 54 Cal. 2d 632 (1960); J'Aire Corp. v. Gregory, 24 Cal. 3d 799 (1979).  In Fifield, the California Supreme Court explained "the courts have consistently refused to recognize a cause of action based on negligent, as opposed to intentional, conduct which interferes with the performance of a contract..."  54 Cal. 2d at 636.  In J'Aire Corp., the California Supreme Court did not explicitly recognize a cause of action for negligent interference with contractual relations, 24 Cal.3d 799, but it did recognize a cause of action for negligent interference with prospective economic advantage.  Id.  This left the door open for lower courts to interpret this doctrine.

///

///

///

14

1    Plaintiff contends that a California Court of Appeals case

2  from 1992 supports the conclusion that a negligent interference

3  with contractual relations claim is viable.  Specifically, they

4  cite <u>SCEcorp v. Superior Court</u>, 3 Cal. App. 4th 673 (Cal.

5  Ct. App. 1992), which noted, "for purposes of this opinion, we

6  consider [negligent interference with contractual relations]

7  within the broad cause of action of negligent interference with

8  prospective economic advantage which was discussed and recognized

9  by the [California] Supreme Court...." <u>SCEcorp</u>, at 677.

10 However, this language is dicta and not the adoption of a new

11 cause of action.  More recently, the California Court of Appeals

12 explicitly declined to recognize this cause of action, holding:

13 "In California there is no cause of action for negligent

14 interference with contractual relations.  While there exists a

15 cause of action for negligent interference with prospective

16 economic advantage [], the California Supreme Court...has

17 rejected a cause of action for negligent interference with

18 contractual relations." <u>Davis v. Nadrich</u>, 174 Cal. App. 4th 1,

19 9-10 (2009).

20    Federal district courts in California have also held that

21 California does not recognize a cause of action for negligent

22 interference with contractual relations.  <u>Walters v. Fidelity</u>

23 <u>Mortg. Of CA</u>, 730 F. Supp. 2d 1185, 1211 (E.D. Cal. 2010);

24 <u>Duste v. Chevron Products Co.</u>, 738 F. Supp. 2d 1027, 1038 (N.D.

25 Cal. Sept. 2, 2010); <u>Andrew Smith Co. v. Paul's Pak, Inc.</u>,

26 2009 WL 3833638, *2 (N.D. Cal. 2009).

27 ///

28 ///

15

1    Therefore, Universal's cause of action for negligent

2    interference with contractual relations is dismissed with leave

3    to amend.

4

5         **4.    Fraudulent Transfer**

6

7    Universal contends that Defendants violated the Uniform

8    Fraudulent Transfer Act under California Civil Code

9    § 3439.04(a)(1), and/or § 3439.04(a)(2), by wrongfully

10   transferring funds entrusted to Sovereign by Universal.

11   Specifically, Plaintiff alleges a fraudulent conveyance with

12   actual intent to defraud, hinder, or delay a creditor.  Cal. Civ.

13   Code § 3539.04(a)(1).  See also Haden v. Miller, 141 Cal. App. 3d

14   169 (1983) ("A conveyance made with actual intent to defraud is,

15   of course, also in fraud of creditors.").  Universal also claims

16   the individual Defendants knowingly conspired with Sovereign to

17   cause these unlawful transfers.  Defendants primarily argue that

18   this cause of action should be dismissed because California law

19   does not recognize a cause of action for a conspiracy to

20   fraudulently transfer funds.[4]

21   ///

22   ///

23   _____

24   [4] Defendants also argue that Plaintiff's claim should be
     dismissed because in the Complaint, Plaintiffs cite Cal. Civ.
25   Code § 3439.04(a)(1) and/or § 3439.04(a)(2) (defining what is
     considered a fraudulent transfer);  however, in their Opposition
26   to the Motion to Dismiss, Plaintiffs cite to a different
     section—specifically, Cal. Civ. Code § 3439.08 (identifying what
27   parties can be held liable for a fraudulent transfer claim).
     Because these provisions are complimentary and in toto establish
28   the standard of a fraudulent transfer claim, the Court dismisses
     Defendants' argument.

1

2

### a.   As to Defendant Links

3       Plaintiff makes a cursory allegation that Defendant Links
4  conspired with and intentionally transferred funds fraudulently.
5  However, Universal provides few details as to Links' involvement
6  and how it participated in any of the transfers.  This does not
7  satisfy the standard for pleading set forth in <u>Twombly</u> and <u>Iqbal</u>.
8  Accordingly, the motion to dismiss should be granted as to
9  Defendant Links with leave to amend.

10

### b.   As to all other Defendants

12

13       Universal alleges that Defendants absconded funds owed to
14  Universal by transferring the monies to themselves and other
15  identified insiders.  This claim is sufficiently pled and
16  survives dismissal.
17       However, Universal also contends that Defendants "knowingly
18  conspired with Sovereign and its other principals" to cause the
19  fraudulent transfers.  Beyond this conclusory statement,
20  Universal provides no additional facts demonstrating how
21  Defendants conspired to transfer funds.  Accordingly, Universal's
22  theory of conspiracy liability is dismissed with leave to amend.
23  ///
24  ///
25  ///
26  ///
27  ///
28  ///

**CONCLUSION**

As a matter of law, and for the reasons set forth above, Defendants' Motion to Dismiss[5] is DENIED with respect to Universal's claims of intentional interference with contractual relations and fraudulent transfer.[6]  Plaintiff's allegation of fraudulent transfer conspiracy is dismissed with leave to amend.

Defendants' motion is GRANTED as to Universal's cause of action against Defendant Kumar and his alleged negligent interference with contractual relations.  The Court provides final leave to amend as to this cause of action.

Any amended Complaint shall be filed within twenty (20) days of the date that this Order is electronically filed.

IT IS SO ORDERED.

Dated: December 15, 2011

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE

---

[5] Because oral argument will not be of material assistance, the Court orders this matter submitted on the briefs.  E.D. Cal. Local Rule 78-230(h).

[6] Because Universal's additional causes of action are uncontested, this Court will not address them.  These include the claims of statutory breach of fiduciary duty; breach of contractual fiduciary duty; conversion; and constructive trust.